The next matter on our calendar is Eugene Scalia, Secretary of Labor v. Angelica Textile Services, Incorporated. Good afternoon. This is Brian Broecker, Counsel for the Secretary of Labor, and may it please the Court. The Occupational Safety and Health Review Commission's repeated characterization determination must be reversed. The Commission here is standing with a fine that's longstanding potlatch debt. Can I ask, can I ask you, this is Judge Sack, I'd like to hear something about the question of its being moot, because I'm quite taken by footnote two in your reply brief, which says the Secretary accepts that he will not actually be able to collect a penalty that is ultimately assessed in Angelica, and says, I'm reading the footnote, because the Secretary did not file a proof of claim before the bar date for the government claims, the Secretary's understanding is that he will not be able to collect the penalty via the bankruptcy proceeding unless he were to file and the bankruptcy court were to grant a motion to approve an untimely file proof of claim. Now, there are two possible ways, I suppose, and you'll probably come up with others, but there are two possible ways that that's not mootness. One is because you want to file such an action, a motion to approve an untimely file proof of claim, or because you're claiming the Munsingware exception that says we should hear it anyway as a matter of equity. And I'm wondering where you are on all this, because it's hard to imagine, this is all about collecting money, and it's hard to imagine you're collecting money in light of the status legal and factual, the status of Angelica. Yes, Your Honor, let me address that. Our position is actually not either of the options that you presented. This court can grant a factual relief to the Secretary by requiring the commission to enter an order finding Angelica's liability for the violations and also assessing an appropriate civil penalty to address those violations. Even if you know that it cannot be paid, right? Irrespective of collectibility. So I think that's a... And irrespective of the existence of the entity? Irrespective of the existence of the entity. In fact, one of the cases that we cited, Dayton Tyler from D.C. Circuit in 2012 dealt with a case where the entity no longer existed. And as we are arguing here, the reason that the case goes forward is because what we're doing is an entry of an order assessing the penalty, and the entry of the order is intended not to advance the Secretary's pecuniary interests, but rather to advance the purpose of the object, which is to regulate employers and assure, as far as possible, safe and helpful work environments for employees across the nation. So the... There's nothing here that would constitute, sorry, a repeat offense and help define repeat offense for other employers who are engaged in similar conduct. Well, really, I think it's two separate issues. The first is the question of mootness pertains to whether, you know, can this court grant effectual relief? And the effectual relief that we are seeking is an order that assesses an appropriate penalty. And an appropriate penalty... I'm sorry, go ahead, sir. The effective relief you are seeking is what I just said? You wanted some declaration that this is a no-no and don't do it again? Not exactly, Your Honor. I would say that what we're seeking is, yes, we want this court to review the commission's decision that these violations were not repeated and, therefore, calculated as penalty under the erroneous characterization of these violations as not being repeated. So what we want this court to do is tell the commission, no, you need to assess an appropriate penalty as required by the OSHA Act, which requires a repeat characterization. Counsel? Yes. Judge Buhler? Counsel? Don't you want us to vacate the commission's decision because you view it as completely wrong? Well, Your Honor, that is the alternative outcome here, that the Secretary, you know, the Secretary does not believe that it is correct that this case has been mooted. And it doesn't want to... I'm sorry, go ahead, Your Honor. In a perfect world, wouldn't you want us to vacate that decision and not have it be binding? Well, absolutely, Your Honor.  If the court decides that this case is moot... Okay, here's my question then. Yes. If we declare that it's moot and, therefore, there's an absence of jurisdiction, can we vacate the commission's decision at the same time that we're saying it's moot? Yes, Your Honor, yes. And there are many number of cases where the Secretary, or, sorry, the Second Circuit and other courts have done that. The Supreme Court recently... But that's not what you want. But that's not what you want. Well, that's what's behind door B. I'm sorry, go ahead. That's what's behind door B. What you really want is what's behind door A. You'll take what's behind door B if that's all you can get. That's correct, Your Honor, yes. You're correct to assume and to understand that what the Secretary is really concerned about in this case is this incorrect decision and order that changes the repeat characterization test and will make it harder for the Secretary to enforce the Osh Act going forward. That is our primary consideration. Now, we have asked the court primarily, and as our predominant argument, to determine that they were wrong and that they committed legal error and then tell them to reassess the penalty under the correct characterization. But if the court disagrees with us and finds that the case is moot, then the correct and the ordinary remedy is to vacate the entire commission decision below because it was not available for... I suppose if we agree with you it's not moot and then affirm anyway on the grounds that it wasn't arbitrary and capricious, you would be, to some extent, sorry that you hadn't agreed that it was moot in the first place. I mean... That would be the bad outcome for us, for sure. Yes, but the problem is that we don't think that it is moot and we don't know even how to argue that it is moot because I'm not sure what action would have mooted the Secretary's claim for civil penalties. It's mandatory under the OPS Act to assess these penalties, and the reason that you assess them is to create a deterrent effect. So I'm not sure at what point the case would have been mooted. The amicus has argued that it occurred when it was discharged, allegedly, by the bankruptcy proceeding, but that's not actually the case because this is a corporation that's liquidating. It doesn't receive a discharge in bankruptcy. So that doesn't work, and the case law that we have establishes that when the Secretary is seeking the entry of an order, it's fulfilling its regulatory and police power. It's trying to send out a message, a regulatory message, to employers not to violate the act. That's distinct and separate from actions taken to collect on penalties, which is what the bankruptcy court is dealing with, is the ability to collect. All right. So let's say hypothetically that what happened here was that the, you know, the violations were all discovered, not the New Jersey ones, but the Ballston Spa ones were discovered on day one and on day five before citations even got to be issued. The entity declared bankruptcy. The entity declared bankruptcy. Would the Secretary still be going forward with this? Well, it would be entitled to go forward with it. I can't say whether they would because they have prosecutorial discretion to decide how to spend their resources, but they absolutely could. The case law makes clear that the Secretary is able to enforce the OSHAC even after an employer has filed for bankruptcy. The entity still exists, and the liability is already attached. All right. But the entity doesn't exist now, right? No, it doesn't. My understanding is it does exist. It is being wound down. At the end of this liquidation process, the plan administrator will dissolve it. But at this point, the entity, I believe, technically still exists. I think that's what is said in the bankruptcy plan and the order confirming it. All right. And that's true. I'm not questioning. I mean, I'm not disputing you, but that's true as of today as you understand it? As I understand it, Your Honor, yeah. I'm not a bankruptcy expert, but I checked the docket a couple days ago, and there's still the bankruptcy still appears to be ongoing and the wind down proceeding as it would under the plan. So as I understand it, this wind down, this liquidation is still ongoing. And since the Secretary's claim wasn't discharged, the Secretary isn't going to collect on it unless it somehow got involved and got in line with an unsecured creditor. But the entity still is in the process of liquidation. I counsel your time has expired. You have reserved three minutes for rebuttal. Is that correct? Two minutes, Your Honor. Thank you. Two minutes. Yes, I see that. All right. We'll turn to amicus. This panel, I think, appointed amicus to argue on behalf of the respondent. Thank you, Judge Fuller. May it please the court. The first point that I have in the brief has everything to do with this mootness issue. And let me drop back for a second because I believe it was Judge Sack who had mentioned Munzingware. And, you know, I did not anticipate the Secretary arguing that even though the court has a moot case, truly a moot case in Article 3 census, it would still have the power to issue a statutory commission. That is a fundamentally mistaken proposition. To begin with, if you look at, and this shows you how small the world is, Justice Scalia's opinion in the U.S. bank court mortgage case, which is at 513 U.S. 18, that's 513 U.S. 18, where the court discusses the power or the discretion of the court of appeals to vacate underlying judgments in the context of settlement. He makes a couple of points, not the least of which is on page 23 that the Munzingware practice and the language, and I believe that was Justice Douglas, was dictum. And that the better approach he pretty much sets out on page 27, and he says this. He says, it seems to us inappropriate, however, to vacate mooted cases in which we have no constitutional power to decide the merit on the basis of assumptions about the merit. And I mention that because one of the arguments they made was that, you know, maybe the case would get reversed. My point is this, that court-appointed amicus is a poor substitute for a party with an interest in the case. And that while you can hear, I'd say, was the commission correct or not, at the end of the day, the only thing that the commission says it will get, or I'm sorry, the secretary says it will get is an increased penalty. Now, my understanding, again, I looked at the docket, my understanding is that the bankruptcy is ongoing. But as far as Angelica Textile itself, its assets are all gone. They've been transferred to an outfit I believe called Wind Down Company or something by that central name, which is paid off claims. There was no proof of claims submitted by the United States or by the Department of Labor. And that horse is in some sense, you know, out of the barn and that's gone. The tough thing here from that perspective is if you look at Munsingware, again, I think it was Judge Sack who mentioned that. Munsingware, and the cases like it, deal with a situation in which the person who prevailed has done something to eliminate the jurisdiction of the appellate court. In this case, the person who prevailed is the secretary. And the secretary, despite the argument the secretary's brief, secretary won. Secretary prevailed, got a finding by the commission that Angelica had in fact violated. It's conceived that that's not going to be enforced, but that's over. So what we're talking about now is, well, we'll call it more of a case because it questions whether it's a serious violation or a repeated violation as the case may be. But at the end of the day, that's not going to give the secretary any practical relief. Moreover, there seems to be a slightly better answer to all of this. If the secretary is right, that the commission got it wrong, and that the potlatch decision has not been faithfully applied, and yet if you read the Occupational Safety and Review Commission's decision and order, you see they did apply. But let's assume the secretary's right, that they didn't apply it correctly. At that point, the answer to that is, this won't be the only case that the Occupational Safety and Health Review Commission hears in which the question of applying potlatch comes along. Some other case will come along with parties who have a real interest. And if the OSHRAC, the Review Commission, does this again, then you have a situation where the secretary can go to the appropriate regional court of appeals and have a case that's not moved with real parties in interest briefed before a panel that can hear from both sides and decide if the commission has in fact made this wrong turn. But from what we have now, we simply have a fact finding by the commission, which comes before this court on substantial evidence review. And at the end of the day, there's really not a whole lot there on this case. And more to the point, as I said before, and I don't want to have to apologize myself, but court-appointed amicus is not the same thing as a party in a case. You're doing a very, if I may say so, your argument is good enough so that you're doing a very good job of gutting your own argument. Okay. I appreciate that. Was that Judge Hall? I believe I heard you. I was the one who was suggesting that. Yeah. Yeah, that's right. I appreciate that. But to me, the problem we end up with again is that unlike some of these other cases like Munsingware and then the other case cited by the secretary in the reply brief, which is the appeal of the ICC order out of eastern Missouri, which is the something barge case against the railroad, these are all cases that started when, in that case, the district court had in fact a live controversy between the parties. And so there was no question that there was Article III jurisdiction. This case, by contract, when it was filed in the U.S. Court of Appeals, at that point, the bankruptcy court had already issued the confirmation plan, which I read to be a discharge because it's over. And at that point, there has never been, not from the beginning, has there ever been a live controversy between Angelica and the secretary. I should say to conclude that as far as the merits of this, which I trust the court will not reach, that again, it comes up on substantial evidence review. The question on all these potlatch cases, of course, is whether there's an order, a case against the same employer for a substantially similar violation. At bottom, that is a question of fact that was resolved by the commission that they were not substantially similar. As I think I put in a paragraph. What if the, this is Judge Hall, what if the commission had applied the wrong standard in determining that? That is, had not applied the secretary's formula for how one figures out whether this is a repeated violation? Well, that, I will grant you that if that's a question of the agency, not, of course, it's a question of law. When the agency doesn't apply the law, then there's no question the Court of Appeals can step in and say, no, you've got to do it over. Right. Well, I was just taking issue with your observation that it was just a factual question. In fact, there's a suggestion, this is Judge Krueger, that the commission filed this as factual findings to avoid judicial review. Well, Judge Krueger, I don't believe it would avoid judicial review so much as it will cabin judicial review. The question is whether the commission properly applied potlatch by determining whether the violations were substantially similar, because that's the potlatch test. Now, to be sure, it says it's doing that, but in fact, if you read the decision, it is in fact doing that. So, yes, the panel is certainly correct that if it's not appropriately applying the test, then there's a role for the Court of Appeals as a matter of law. But on the other hand, when the question comes down at the end of the day to whether the violations are substantially similar, and that's what the commission decided by saying they weren't, that determination is a fact determination in the same way the jury determines whether someone is negligent, or whether in the employment discrimination cases, whether the jury determines whether there was discrimination. If the law is charged and the jury in the correct way, or the district court applies the law and findings of fact, the role of the Court of Appeals is very limited on those sorts of fact findings. And I suggest, Your Honors, that that's the same thing that's going on here. I'm not sure I have a whole lot more to add. If the panel has any questions. I have no questions. No, thank you. Thank you. Well, thank you very much, Judge Kloh. I appreciate being appointed on this. We'll hear from an attorney for the secretary. Thank you, Your Honor. Yes, thank you, Your Honor. I'll first clarify a few points on the mootness issue to the extent we've already discussed it. We are not saying that our case is moot in the classic sense. We are not saying that at all. We're saying the case is not moot. It has not been discharged. And what we're saying is whatever happens in the bankruptcy proceeding is tangential. It doesn't relate to this court's jurisdiction. But even the cases that the amicus cited below talked about how the case was moot if it was not impossible to collect. If it was impossible to collect, then the case was moot. Those cases are in a posit here because they weren't talking about regulatory civil penalties, such as the ones we're talking about here. And even if they were, it's highly unlikely, but it's technically not impossible to collect these penalties at this point. You said technically not impossible? Well, as we stated, there are theoretical avenues to collection. We have represented to the court faithfully that the secretary does not intend to collect because at this point it's so highly unlikely that we would get our money's worth to go forward with it. But theoretically, it's not impossible to collect because there is, as stated in our brief, this avenue for filing an untimely group of claims. That being said, again, our position is that effectual relief can be granted simply by entering an order that assesses the civil penalty to the company in order to create that general deterrent that the OSHAC requires. I'd like to address also the idea brought up by the amicus that we should just wait until another case comes along. I'd like to just clarify how difficult that is and how that's not something the secretary can rely on. The commission hears cases based on discretionary review procedures. You have to petition the court to review an issue and then disagree. It could be many, many, many years before the commission hears another case in which it can take a second look at this incredibly flawed decision from below. So that's why we think it's important for this court to rule on it now. I'd like to very briefly talk about the merits here. When we rule on it, as you requested, you want us to say, colon, fill in the blank. We want this court to say that the violations are repeated because the conditions and hazards involved in Angelica's violations were effectively identical. That requires that finding. Can't we accomplish that by vacating the commission decision? You can vacate the commission decision and should if you decide that the case is moot. However, we are asking that this court rule on the merits because we don't believe that the case is moot. So yes, I know in the end, if you find that the violation should have been characterized as repeated, as we have argued, because as you pointed out or suggested, the commission has applied the wrong law. Whether or not a violation is repeated is a mixed question of law. In fact, the question of law being, did they apply the right law? They did not. They looked at the factors, the very factors that Potlatch said you should not look at when deciding if a violation is repeated. So that determination needs to be reversed. If you reverse it, you can either ask the commission to do the analysis again or you can find that the violations are repeated as the facts demand and only ask the commission to reassess the penalty based on that proper characterization. So one of those two remedies is what we have requested from the court. But we don't find facts with the Court of Appeals. The court can. The ordinary remand rule requires that you would send that question back for reanalysis. However, the court can, where it would be futile to give an agency or district court another crack at an analysis to make a determination, order that they find that fact and proceed accordingly. We included some sites from the Third Circuit in our opening brief to that effect. We have done this with OSHA characterization and determination. And if there are no other questions, I thank the court for attending. Thank you both. Thank you both. We'll reserve decisions. Thank you for appearing. Since there are no other cases on the calendar, I will ask the clerk to adjourn court.